This is 410.0.290. Jay Brian McDonald as Independent Administrator of the Estate of Betty J. McDonald versus the Illinois Department of Human Services et al. We have for the Appellant, Carl Elitz and for the Appellee, Blaine Young. Did I mispronounce your name? No, actually, Your Honor, you got it right. May it please the Court, good morning. I am Carl Elitz from the Illinois Department of Human Services. Your Honor, the Circuit Court's judgment in this case should be reversed because there's nothing in the Court's final order and there's nothing in my opponent's response brief which refutes our contention that federal and state law require a 17-month look-back penalty imposed on a Mr. McDonald's application for benefits. Section 1396P Part C of the federal law says that asset transfers for less than fair market value have to incur a penalty period. 1396P Subpart H defines assets as including income and resources. Those couldn't be more clear. State law follows the federal law in this and says in Section 5.2.1 of the Public Aid Code that assets that are transferred for less than fair market value have to be subject to an asset penalty period and there's no reason to not understand that assets is used in the state statute refers to the same assets that the federal statute applies to with regard to penalty transfers. Given this and given the fact that my opponent hasn't even argued that this is not the case, there's nothing really here except an argument that equitable estoppels should stop the Department from imposing a penalty period, even though federal and state law compel it, because a reading my opponent espouses tells them that assets should not include income. That reading is wrong, but even if it's correct, it doesn't result in equitable estoppel. What do you think that letter means? We had a witness who testified, Joe Ingram, who testified that it was meant to be an accounting rule used to calculate future payments that the applicant would be making to the nursing home so that when a person has income in a given month, it would be incorrect to read the rules such that that income would take them out of the program because they'd have too much income perhaps. If they had medical bills that they had to pay. So the way it would work is that if they had income that was too high, it would take them out of their benefit, too high to get benefits. But in the same month they had medical payments they had to make, then that income would not be used for purposes of the program. And that's all that means. I checked the worker's access guide this morning and I saw that it was amended. It now says that for budgeting purposes, that's the way the rule is meant. I think that's the way it was always intended. Apparently, at least once before, about five years before Ms. McDonald made an application, someone had argued to the department that it meant something different and was in what my opponent calls the John Rubich letter. And apparently this person was told that it should be read differently and that the income received could be transferred without penalty. That violates federal law. That violates state law. If the department did it, the department shouldn't have done it. And the fact that the department did it, certainly five years before she made her application, shouldn't bind the department to continue doing it forever. Equitable estoppel, which is what I think this case is really about, requires first and foremost that the person who's claiming the benefit of estoppel show that they acted reasonably. And it's not reasonable to pull a directive to state workers off the Internet and to use that and say, that's all I'm looking at, misreading it on top of everything else. But even if it is read correctly, to read it in a way that violates promulgated federal and state law. The state's interpretation of the federal law is bolstered by the Federal Department of Human Services, I think is the name. They have a division, the Center for Medicaid and Medicare Services, CMS, which issues to the state's directives on how to apply the rule. And that, on top of the state and federal law that I cited, also says that there needs to be this look-back penalty imposed. We don't disagree about how to calculate it if I'm right on the law. So that's the reason why the case came up immediately from the circuit court's decision. It's somewhat stunning to me that the circuit court's order here doesn't mention the federal or the state law that controls, even though it was argued in the circuit court before the petition for rehearing was filed and all re-argued. But still we were hit with this rather surprising decision that the workers' action guide somehow trumps federal and state law. I said that the reasonableness is a requirement of equitable estoppel. When equitable estoppel is argued against the state, as it is here, the courts apply a much higher burden and said that the pronouncement of state, the reliance must be on something like a state statute. So in other words, if you follow one state statute, you can't be held liable for violating another. But that's not what we have here. This workers' guide is promulgated by the department, is it not? It's issued to state employees and it is on the internet. Promulgated is a loaded term. Okay, I'll say that. I'll agree with that. But I didn't mean it to be loaded. My point is, whatever was in that document placed on the internet, that was within the department's complete control to change, modify, amend, strike, delete, whatever. Certainly. But yet it was out there. Yes. And a citizen of the state of Illinois relied on it. Correct? Yes. Well, that's what he says. I'll take him into court. And that does raise even some question about estopel, does it not? I can see where someone who made the mistake and read the workers' action guide and didn't look at the statutes might say, this is unfair. We're all lawyers, but those statutes are pretty incomprehensible. I think that's something I should agree with right away, too. They're very complicated. That's why there's so many layers of interpretation. The Center for Medicaid and Medicare Services interprets it for the states because it's so complicated. The states probably would get it wrong. Judge Bell's in his order after he says asset transfer policy does not apply to transfers of income, he cites to not just the letter of John Rutzisch, but also PM 0702068. That's the WAG. And why is that not a correct citation? Well, it's correct in the sense that there is a workers' action guide provision that says that, but it's not law. It's a directive from someone in the department to lower employees telling them how to process things. And what happened in this case is one of our employees apparently noted that this application of this WAG to this case was wrong and filled out a standard form asking for guidance from the Department of Policy Bureau, which I guess didn't exist back in 1979, which is the case they write. They say, you know, the employees have to follow these things literally. Well, even if he's right about the WAG provision, today they don't. Today we have this form that people fill out asking for guidance. It went up the chain of command. It ended up with attorneys at the department who advised the requester that the interpretation was as she understood it to be, which is that there had to be a penalty imposed for this transfer, and the department imposed the transfer. And what was the penalty? 17 months. But how many months did we divert income? I believe it was, well, I think half of that. And I'm shooting from the hip here. Eight and a half months. Maybe my opponent can explain that a little better. But I think what happened is they diverted so much income and assets here that it was a double penalty that was imposed upon them for every month that they did this. And because they went over the two-month requirement, if you throw in this income issue, then the department issued a two-month penalty for every month they did this. And it became 17 months, and I know half of 17 is not making sense. So maybe you can explain that better than I can. But, yeah, I mean, I think they were timing this out. They were advising Ms. McDonald that she didn't have to take these income transfers. These were her Social Security checks, I think, that she was receiving every month. Instead of using them to take care of herself, she transferred them to her adult children. It just really violates all sorts of policy that Congress had intended when they enacted the Medicaid statute. That's exactly what was designed. But so many of the amendments to the Medicaid statute were designed to prevent this sort of thing. If you look back now, it's been extended to 60 months to just prevent this exact sort of transfer. So the policy opposes this sort of calculation as well. My last point with regard to equitable estoppel, as I said, it has to be reasonable. It wasn't reasonable. The state has certain benefits when estoppels argue against it. There has to be a high level of promising people. They won't have liability. Lastly, estoppel has to be brought against the state to the level of fraud or injustice. There's a wonderful case, and I'm pointing this out, but I cite it in my brief, Brown's Furniture, where a furniture company in Missouri contacted the Department of Revenue and said, do we have to collect sales tax from our customers? The Department of Revenue said to them informally, no. And they didn't. And years went by. And then Brown Furniture's competitors said, how come we have to collect sales tax and they don't? And the Department said, they do. And went back and hit them with a penalty. And if there ever was going to be an estoppel case against the government under this sort of fact pattern, I think that would be it. The Supreme Court said, no. People have an obligation to get the law right. If the agencies don't get it right, that doesn't resolve people. I think they took judicial notice of the fact that you can't trust the state agency on the telephone. That was my case. Oh, excuse me, Your Honor. I didn't realize that. But that's right. And that case sort of indicates the level of misdirection the state has to go to. And even then it wouldn't come to that level. So here we have my opponent actually going on the Internet, looking at the procedures the workers are supposed to use, and then somehow elevating that to something far beyond what it actually is. But it would seem to me that actually, if this was an attorney doing this, that the attorney did his due diligence, did exactly what he should have been doing to advise his client as to what they should be doing with the assets and the income. I don't agree. First of all, they don't ever say it was an attorney. They say they're advisers. I think that might tip us off that maybe it wasn't an attorney advising her. Also, anyone doing this sort of work ought to realize that the statutes matter. And as I said, 1396P subpart C of the Medicaid law says that there has to be a penalty period imposed if you transfer assets for less than fair market value. So anyone who is doing due diligence shouldn't be starting with the workers. Maybe you can start with the workers' action guide. Because sometimes if you're coming totally cold to it and see what they're going to do, you have to back up and say, why are they doing it? I'm going to advise someone and tell them to rely on my advice. You better get it right. It was wrong. It was dead wrong. And it was wrong five years ago, too, when Mr. Rupich apparently advised someone. We got a little bit ambushed by this letter. It was not in the record at the agency level. There was no way for us to really talk about it until we saw it. We didn't see it until it came up on administrative review in the circuit court and how it was talked about in the record. So we knew it was there, but I don't really know what the Rupich letter is except what's in the record, a couple of pages where he just says, yeah, you're reading it right. Go ahead and do it. Wasn't it admitted at the administrative hearing? I don't believe it was, Your Honor. Well, then how does it even get before the circuit court? I don't know, Your Honor. It was part of the record on appeal. I certainly saw it in the circuit court record, but I don't think it was admitted at the agency level. It's not discussed in the agency's decision. I think that's because the agency didn't have it at the time the decision was written. Now, they talked about it at the hearing, so obviously people knew that they were talking about it. So maybe it was just an oversight, but it didn't make it into the record. The administrative record seems to have made it into the appellate record. Was there an objection at the circuit court to its being in the record? I don't recall, Your Honor. I thought, excuse me, I did not do trial work in this area. When the record is prepared, it's prepared by your office, correct? Yes, and it's tendered as the answer to the complaint. And it wasn't in that packet. So, okay. It got admitted after that, when they were before the trial court, Judge Bell. Now, I wasn't there, and my opponent was, and he may tell me that I'm full of hot air, and if he does that, then he may be right. I mean, usually you don't hear new evidence at the trial court. Exactly, Your Honor, and that's kind of my point. Now, we probably should have jumped up and down in screen-bloody murder and didn't, so there's the forfeiture and the forfeiture argument. But you should understand that this Rupich letter was not developed at the agency level where it really should have been. That's where we might have figured out what it was all about, and it might be distinguished on some fact that I don't know anything about. He says it says this. It looks like it says this. It seems like it's his fact pattern. My point really is that a mistake made five years earlier doesn't bind the department to make the same mistake forever, and that really should be the lead story here. Lastly, I suppose I have one last point to make. I think their view of administrative review law is really very cramped. They seem to feel that the agencies have to act robotically and monotonously and do the same thing over and over and over again, and I think there's a line of cases now that are clear that that's not true. The department can change things as long as they're not arbitrary and capricious in the way they do it. That's the standard of this sort of thing. A change, of course, can be made by an agency if they're not arbitrary and capricious, but it's not arbitrary and capricious to apply the law as it's written to the facts. So there's nothing here that I think should work towards affirming this very bad judgment and we ask that it be reversed. Are there no further questions? No, thank you. Mr. Young? Thank you, and may it please the Court. Mr. Eulitz, let me deal first with the proof-check letter. It is, in fact, if you look at about page 160 of the common law record, reviewed and discussed at the administrative hearing, and then if you look at the end of that hearing, the administrative law judge kept the record open for five days to receive that fax, and I assure you that that was sent up there. Why it's not in this record, I do not know on the administrative level. Beyond that, however, they would kind of denigrate who Mr. Rupchik was. Rupchik. Rupchik, I'm sorry. My old law clerk. Okay, I'm sorry. Mr. Rupchik was the chief of the Bureau of Policy, and when the inquiry, there was a general inquiry made, and we cite the statute in our appendix to the Appellee's brief that says where there is an expression, an interpretation of a rule by the department, and it's not specific to a client. It operates as a rule and has to be followed. Mr. Rupchik was plainly asked. I mean, the inquiry went to a Mr. Hartel, and it was obviously sent to the chief of the Bureau of Policy, and there was a specific question made. It said, and it's not the worker's action guide, it's the policy manual that expressly accepts from the definition of assets income received within the same month. And Mr. Rupchik was asked specifically, does that mean when income in a specific month is defined as not being an asset, does that mean it's exempt from asset transfer policy? And he said yes, very expressly. So it rises to a level of an interpretation of their own policy manual, which is very expressive. Let me get it here. It's 070206A is the one that accepts from the definition of an asset, income in the same month, and that income is given away. And the mischief that happened here is because Mrs. McDonald is sorting through her affairs and saying, look, I will pay privately and deliberately incur a one-month penalty by making transfers of assets, the old half-a-loaf thing that's been going on for decades. That's how you do it. You preserve some assets. But what happened was that she's coming in under the two, but then the department determined arbitrarily, and I want to get to that here in a minute, that they want to add the income to it, and that put it over the top, and it doubled her penalty. She was perfectly willing to accept the original penalties, but then it was doubled because the income was added to it, and you just do the math. And Mr. Elitz in his footnote exactly describes the process there, and we certainly approve of that. Mr. Young, can I ask you one question? Yes. If your theory is correct, what would prevent somebody whose income was $10,000 a month from giving away their income each month of $10,000 and qualifying for nursing home subsidy from the government? Well, if they had $10,000 worth of income, they would have sufficient income to pay their own way. They wouldn't qualify. Well, if they give it away and it's not counted as an asset transfer and they show zero income then. No, you can't apply for benefits the same month you make a transfer. That's wrong to begin with. All these penalties were incurred before she ever applied for Medicaid. So, by definition, if the income is there, she doesn't qualify for Medicaid. Now, to the extent that that income may have been given away before when there was a penalty incurred, then it would be appropriate. I mean, maybe assets, and the assets is where the definition is, is less than twice, because under Illinois law they disregard any fraction of a month. The old law, and here's where we really have to back up. The Gilmore and Poindexter cases, both of which came through this court and ended up in the Illinois Supreme Court, and in both instances cert was denied in the U.S. Supreme Court. It was specifically held that Illinois is entitled to run its own Medicaid law. Under the system of cooperative federalism, Illinois law is not bound. It can even be more generous than federal law, but it can't be more restricted than federal law. But the point is we looked at Illinois rules, because by federal law, Illinois has to appoint an agency to administer the Medicaid law in this jurisdiction, a single agency, and we set that out in our brief. So we start with the fact that, yes, there's federal law, but it's not federal law that applies here, and I think it's kind of disingenuous for the department. We all recognize it, and on February 8, 2006, Judge Bush signed into law the Deficit Reduction Act of 2005, which wholesale changed a lot of these Medicaid rules. There was no finger lifted in the state of Illinois to implement those rules, even though they suggested that they should be done by July 1, 2007. In August of this year, some new rules were finally promulgated. Is a citizen really supposed to anticipate what the government is going to do by way of implementation? I don't think that's fair at all, and what Mrs. McDonald did was said, we looked at the policies, and the policies themselves say, these are the official policies of the department. This is what we're going to follow to determine whether or not your case was correctly decided by the local office and the worker. So that's what she relied upon, and if you read all those old cases, and I think you're honored in the Gilmore case, recognize that this is really a hodgepodge and a complicated law. It's more complicated than the IRS code, but why shouldn't a citizen be entitled to vote on the express policies that are published by the department saying, here's how your case is going to be decided? That's what Mrs. McDonald did, and federal law is not here, and there's a reference made by the state to the state policy, or the state Medicaid manual. That's not a state law either. That's just the federal law saying, here's state, here's how you should develop your Medicaid process and procedures. You should follow that, and we have no quarrel with that, but why can't the state just be honest and say, you know what, we want to change the rules and publish them and follow the rules and say, from now on the rules are going to be thus and so, but to pick and choose and to say, okay, the federal law that President Bush signed into law in February of 2002, it says that, for example, we have a 60-month look-back. Well, they didn't adopt that one. It says that they're supposed to determine the initial application of the penalty, which is prescribed under the law as of the date an application is made. They don't follow that one. So none of these things, and it's really through what's called the Office of Inspector General, where some of these cases have gone to, where there's just some worker there that says, look, I've read federal law. I don't think this is the way it should be, but why can't they just be honest about it and say, let's change our rules. Let's change the policy manual. Let's change the workers' action guide. Will a state lose Medicaid funding reimbursements from the federal government if they don't comply with what the federal law states? Well, no, because, you know, unless, I mean, it's potentially if they were more restricted than federal law allows. What about the 60-month look-back period? Apparently that's been changed. Can a state still have a shorter look-back period? Well, the state still uses 36 months. There are no rules in place. Now, I don't know. I mean, to my knowledge, the federal government hasn't threatened Illinois with the loss of Medicaid reimbursement. But the mandate of the DRA was that no later than the end of the legislative session following the one in which the law was enacted should be the deadline for the states to implement the law. But Illinois did nothing. And the legislature even offered them a one-year opportunity to install new regulations by emergency rule. They did nothing under that either. So all these people out there that are in need of medical assistance or trying to design their affairs so that they can get medical assistance or reserve a few assets for their children, you know, are going by the existing and extant law, which the department has published online. And that's all this case is about. If you look in the Miller case we cited, even general counsel to the department says, I don't care if the rule that you're publishing is wrong. You've got to follow it because that's what the citizens are relying upon. So it seems to me that all this, I mean, if federal law requires something different, it behooves the department to say, our laws and rules are out of compliance. Let's fix them and let's do them in accordance with the Administrative Review Act. And let's publish some new rules, let's have some hearings, and tell the public what they're really going to be dealing with. They didn't do that. It's some worker writing to Mr. Leifold, and this is in the record, saying, gosh, I looked at federal law. I think federal law requires that income be included with assets despite the fact that Mr. Leifold writes back and says, hey, you know what, I've never seen it either, but I agree with your interpretation. And based on that, the local office then takes the recommendation to the OIG and they penalize Mrs. McDonald 17 months, despite the fact that she did everything exactly as she understood it by looking at the regulations, the policy manual, and the worker's action guide. But you don't disagree that federal law does in fact require income, if it's transferred, to be considered an asset transfer? I'm not sure that it does, but assuming that it does, it doesn't, I don't think, I don't know how you're going to stick an individual applicant with that rule without changing the Illinois rules which administer the Medicaid law, because we have no obligation in making an application for Medicaid to look at federal law. Now, in the instances of Gilmore and Poindexter, we certainly did, and said Illinois is out of compliance, and made an effort to say that the Illinois rules were inadequate or wrong, but we lost. I mean, to my disappointment in each of those cases, they said, look, the whole system of cooperative federalism does not preempt this area of law, and it is the states entitled to, and even under a case that Mr. Edens is very familiar with, the Vanders case, or something like that, which I cited in my brief, they said, Illinois has got a whole separate Medicaid system. It's all by itself, and that's basically true, and that's what Poindexter and Gilmore basically said. Illinois can have any rules it wants, because it's, you know, and it would perhaps be up to someone to come in and challenge it and say it doesn't comply with federal law, but they can make the rules, but I guess the important point is, is Mrs. McDonald required to anticipate some court battle where some judge or appellate court is going to declare that the state rules are out of compliance, and she should have anticipated that and complied with what the expression of the law or the rule is going to be at a later time. That just seems abhorrent, and that's why we've really reached the issue of whether or not this really amounts to a situation where it's a species of fraud, saying this is how your case is going to be decided, but you know what, in your case, we don't like what you did, and therefore we're going to just borrow a rule from federal law and incorporate it in your specific case when there is nothing in the policy manual or the worker's action guide to back that up. To the contrary, there's an un-revoked letter by the chief of the Bureau of Policy saying, you read our policy exactly correctly. Income during a month is not subject to asset transfer policy, and so you can give it away that month, and it doesn't affect your benefits at all. Now that, if you look at that carefully, that's not case-specific, and if you look under 5 ILCS 100-1-70, under rule, it specifically, the legislature says, rule means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy. Then it goes on and says there are a few other things that don't apply to that, like personnel issues or where there's a private ride affected. But that's not what the issue was here. It was simply that a request for an interpretation of what the policy manual meant and did it mean what it appeared to say by its express terms to which he responded absolutely correctly. Mr. Elitz indicated that state law compels the recognition of the income as an asset. It does not. To the contrary, state law expressly defines income out of the asset definition and qualification. Federal law may, but we're not concerned about federal law. And if the state wants to employ federal law, is it not incumbent upon the state to change their rules and to stop playing some sort of a bait-and-switch operation with people that are coming in asking for Medicaid benefits, saying, you know, here's our rules, but in your case, after the fact, after you've made these gifts all these months, that we're going to impose an additional penalty there even though the state policy manual and the worker's action guide is quite to the contrary. Is there anything in the record that would indicate others were affected by this change in the policy? Not in the record. I can tell you that there are about a dozen or two cases out there that are waiting to come up or waiting to be ripened. This one is important from that standpoint. I've got a number of them that I've filed myself. So it is a very important issue because it deals with some other issues. The Office of Inspector General has just been piecemeal just borrowing from what they think is applicable law from the Deficit Reduction Act of 2005 and implementing them case-by-case, which is, if there's anything that can be described as being arbitrary and capricious, surely it's that. Where a worker in an office that I don't even know the address of gets a call from the local office saying, what should I do under this situation? And they say, well, federal law requires you to do X, Y, and Z and so the local worker does it. They always do it under the guise of, well, this is only a recommendation now. But the local office is not going to go counter to somebody who calls themselves the Office of Inspector General and the recommendation made by them. Zander was the case I was referring to that was recently decided. But that basically really goes a little farther than I think even Gilmore and Poindexter say where our Supreme Court and affirming this court indicated that the whole system of cooperative federalism does not preempt the state law in the situation of the administration of the Medicaid Act. And the states have a lot of freedom to act contrary to federal law in that. And the state administrative procedure is basically separate and apart. Specifically, and we refer to it, the state can be more generous. Everybody knows how Medi-Cal has always been and we know the woes that state's having because of it but they've been much more generous than federal law has been for many, many years. The trial court did find expressly that there was reliance by Mrs. McDonald on the published rules of the department and that she was entitled to rely upon those published rules. And again, I refer you to the Miller case where it seems to me the general counsel for the department itself is basically saying Mrs. McDonald was absolutely entitled to rely upon what our published rules are. And if they're wrong, we ought to be changing them not just whacking people on an arbitrary and capricious and piecemeal basis. For all those reasons, unless you have any further questions, I'd ask that the court affirm the trial court and remand it to the department to follow the case of the trial court. Thank you. Mr. Young does not agree that the federal statute mandates treating transfer of income as a transfer of assets. I disagree with Mr. Young. What mandates that the state apply the federal law? In my reply brief, Your Honor, on page 1, I cite section 1396P-H and 1396P-C. P subpart C begins, the state plan must provide that if an institutionalized individual disposes of assets for less than fair market value on or after the look-back date specified, and then there's the mathematical computation that we say is 17 months, the state plan must provide. And that's what happened here. But now wait a minute. I thought Mr. Young just said that you don't use the look-back provision that the feds use. No, that's not true. We certainly do. I'm talking about the 60 months versus 36 months. I don't know about the 60 months versus 36 months. That's not what this case is about, so I really can't speak to it. If he's correct about that, it's just not this case. So you get to pick and choose which of the federal provisions you follow? No, Your Honor, I don't believe the change in the law that Mr. Young is talking about affected this area of the law at all. 1396P subpart C, I think, said this going all the way back, that the state plan had to comport with the federal law in this area. I think we're just off in a different world here. He's upset by the fact that the state hasn't promulgated rules with regard to the changes that were made by President Bush, but I don't think that's this case. If it's 36-60 months, it's not this case. These transfers all happened within the year before she applied for benefits. So I think mostly Mr. Young is just venting a lot of frustration with the Department for things that aren't this case. My brief, I think, lays out the path of federal law requires, state law conforms with federal law, and the Department applies both in figuring out what someone's responsibilities are. We argued Poindexter against each other in the Illinois Supreme Court. I think it came through this court, and that court, and I think this court too, starts with federal law. What does federal law require? What does the federal statute say? How do we interpret the statute to make it right to these facts? And I think if this case follows that pattern, it should. You get to the result that this person has a 17-month penalty look-back. Mr. Young said the circuit court found there was reliance. The circuit court doesn't make findings of fact when an administrator reviews. The agency does. I don't believe the agency did that. I think the agency said that Mr. Young asserted that there was reliance. Okay. Like I said, I'll take him on his word, but I don't think there was a finding of fact. He says the Rube Sitch letter was un-revoked. It's hard to revoke something you don't know about. It was a letter that was apparently sent from one person to another, apparently the Chief of Bureau of Policy, back 5 or 6 years earlier. The Chief of Bureau of Policy is not the Secretary of the Department of Human Services or the Director of the Health Care and Family Services. Those are the people who speak for the agency, not the employees below. So this is a case, as I said, it's about equitable estoppel. And I don't think this case comes up to that level. I don't think there's any fraud here. There's nothing here that looks like fraud. There's all this promulgated law that just needs to be applied correctly. Are there no questions? Thank you very much.